ANN MCDONNELL *vs.* ARTHUR V. MILHOLLAND, EX'R of ELLEN KELLY and THE CARROLL BUILDING ASSOCIATION, NO. 4, OF BALTIMORE CITY.

*Modification of a deed of Leasehold property refused as not authorized by the Evidence—Presumption arising from Lapse of time—Claim to certain shares of Stock not sustained by the proof.*

E. K. and A. McD. entered into a partnership in the City of Baltimore. In the articles it was stipulated that all the net profits accruing from the business should be held and owned jointly by them *share and share alike.* In the event of the death of either, the survivor, (subject to sundry small charges,) was declared to be "entitled to have and hold all and every part

and parcel of the property that may have been held *jointly* by the partners." E. K. died in 1876, leaving a will. During the partnership a leasehold interest in a lot of ground was purchased by said parties, and by deed of assignment was conveyed to them as tenants in common. And certain shares of stock in a Building Association were purchased in the name of E. K. on which were paid the weekly dues or instalments down to the time of her death A bill was filed by A. McD. against the executor of E. K. alleging that through mistake, inadvertence, and the failure to give special information to the conveyancer, the deed for the leasehold property was so drawn as to vest it in the parties as tenants in common, and not as it should have been in joint tenancy, and asking that the sole ownership might be decreed to be in A. McD. and that the executor of E. K. might be decreed to convey by deed to A. McD. the undivided moiety of said lot. Allegations of the bill were denied in the answer of the executor. Held :

1st. That whether the application be regarded as one for the reformation of the deed, or as for the establishment and declaration of a trust in respect to the property conveyed by the deed, the effect was substantially the same, and in either case the beneficial effect and operation of the deed was proposed to be essentially changed and modified.

2nd. That such being the nature of the application, it is a well settled principle that all the essential facts to entitle the party to relief, must be made out and established in the most clear and decided manner, and to the entire satisfaction of the Court.

3rd. That there was no satisfactory proof that any portion of the partnership funds was applied to the purchase of the property for which the deed was taken.

4th. That the evidence offered to show that the draftsman of the deed prepared it in a form, and made it convey an estate, different from what was really intended by the grantees, was so indefinite and inconclusive that it furnished no safe ground on which to base a decree.

5th. That the lapse of time before proceedings instituted, and the fact that no question or objection was raised in regard to the form and effect of the deed until after the death of E. K., a period of nearly eight years, added greatly to the presumption against the complainant, and increased the necessity for plain and demonstrative proof of the facts upon which she founded her claim to relief.

As to the shares of stock in the Building Association, the complainant made claim upon the alleged ground that the money paid on the shares was an investment of the profits accruing from the business of the partnership.

This allegation was also denied in the answer of the executor. Upon a review of the evidence bearing upon this question, it was HELD:

That the allegation of the complainant was not sustained.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, MILLER, ALVEY and ROBINSON, J.

*G. Hawkins Williams*, for the appellant.

*Thomas A. Whelan*, for the appellees.

ALVEY, J., delivered the opinion of the Court.

In June, 1868, Ellen Kelly and Ann McDonnell, the appellant, entered into a co-partnership, to carry on a small grocery business in the City of Baltimore, at the corner of Forrest street and Hull's lane. In the articles of co-partnership, dated the 27th of June, 1868, it was stipulated that all the net profits accruing from the business should be held and owned jointly by them, *share and share alike;* and that, in the event of the death of either, the survivor should have the body of the deceased decently buried, according to the rights of the Church to which she might belong, and pay the sum of $200, out of the funds of the joint business, for charitable purposes; and after that, the survivor was declared to be " entitled to have and hold all and every part and parcel of the property that may have been held *jointly* by the said co-partners."

Ellen Kelly died in November, 1876, leaving a will, by which she made certain bequests, principally for the benefit of certain charities connected with her Church, and constituted Arthur V. Milholland, one of the appellees, her executor.

After the formation of the partnership and during its existence, a leasehold interest in a certain lot of ground and improvements, on the corner of Forrest and Douglass streets, was purchased by these parties for the sum of $1150, and by deed of assignment, bearing date the 1st of April, 1869, such interest in the property was conveyed to Ellen Kelly and Ann McDonnell *as tenants in common.*

It also appears that in January, 1872, there were purchased fifteen shares of stock in the " Carroll Building Association of Baltimore, No. 4," in the name of Ellen Kelly, on which were paid the weekly dues or instalments down to the time of her death, amounting to a considerable sum.   Besides these transactions, there was a running deposit account kept in the Savings Bank of Baltimore, in the joint names of the deceased and the appellant, subject to the order of either or the survivor ; and the balance due on which at the death of Ellen Kelly was drawn out by the appellant.

The object of the bill filed by the appellant, shortly after the death of Ellen Kelly, is twofold : First, in regard to the assignment of the leasehold property, and second, in regard to the shares in the Carroll Building Association ; the appellant alleging that both the leasehold property and the shares of stock in the Building Association were purchased with and paid for out of the partnership funds and profits.

1. And first, as to the conveyance of the leasehold property.   In the bill, after stating the circumstances that induced the purchase, it is alleged, " that the parties being ignorant of law and of conveyancing, they requested a common friend to have the deed of conveyance of said property prepared, and he did so ; but he, equally ignorant, failed to give special instructions to have it drawn and executed to them in joint tenancy, and through mistake, inadvertence, and failure to give special information as to how the same was to be held under the terms of said agreement,

the said deed was drawn so as technically to vest the said
property in your oratrix and said Ellen, as tenants in
common, and not as it should have been, in joint tenancy ;
and your oratrix avers and charges that by reason of such
mistake, each half was respectively held in trust to abide
the contingency of such survivorship, and upon the death of
said Ellen, your oratrix became entitled to the whole
interest therein in her own right." And the prayer of
the bill, in respect to this property, is, that the sole owner-
ship may be decreed to be in the appellant, and that the
executor of Ellen Kelly may be decreed to convey by deed
to the appellant, the undivided moiety of said lot, with the
improvements thereon.

The allegations of the bill are flatly denied by the
answer of the executor of Ellen Kelly ; and the Court
below, upon the pleading and proof, decreed adversely to
the claim of the appellant.

In reply to the argument of the appellee that the proof
is not of a character to justify the reformation of the deed,
it is said for the appellant, that this is not an application
to have the deed reformed upon the ground of the alleged
mistake in its prepartion ; but that it is an application
simply to have a trust declared and executed, in con-
formity to the alleged intention of the parties, and the
right of the appellant as fixed and determined by the arti-
cles of co-partnership. But, whether the application be
regarded as one for the reformation of the deed, or as for
the establishment and declaration of a trust in respect to
the property conveyed by the deed, the effect is substan-
tially the same. In either case, the beneficial effect and
operation of the deed is proposed to be essentially changed
and modified. And such being the nature of the applica-
tion, it is a well settled principle, that all the essential
facts to entitle the party to relief must be made out and
established in the most clear and decided manner, and to the
entire satisfaction of the Court. *Watkins vs. Stockett,* 6

*H. & J.*, 445; *Showman vs. Miller*, 6 *Md.*, 485; *Gillespie vs. Moon*, 2 *John. Ch.*, 585. And, upon a careful examination of the record, we are of opinion that the proof falls very far short of this requirement.

In the first place, there is really no satisfactory proof that any portion of the partnership funds was applied in the purchase of the property for which the deed was taken. The purchase was made in less than a year from the commencement of the partnership; and the only proof in the case that the appellant contributed any capital to the business, is a casual declaration made by Ellen Kelly, that the appellant had put into the business between five and six hundred dollars. It is, however, quite apparent from what source the money came that was paid on the purchase of the property described in the deed. Ellen Kelly had been carrying on business for a considerable time before the formation of the partnership with the appellant; and she had on deposit in the Savings Bank, twelve or thirteen hundred dollars. That account was kept in the joint names of herself and her daughter, Mary Maloney, (who became the wife of Michael McDonnell in April, 1867,) payable to the order of either or the survivor; and on the 27th of April, 1868, that account was closed, and Ellen Kelly drew from the bank $1,306.96. She opened another account in the bank, the heading of which as it now stands, according to the copy furnished in proof, is, "Ellen Kelly and Ann McDonnell, subject to the order of either or the survivor;" but the first entry in that account is of May 6th, 1868, a deposit of $1200,— nearly two months before the partnership was formed. There were several other deposits made of small amounts, between the date of the first entry and the 31st of March, 1869, and nothing drawn out; and on the latter date the sum of $1200 was drawn out by the appellant, leaving a balance on deposit of $260. This account continued to run and accumulate until the death of Ellen Kelly; im-

mediately after which event it was closed, and the balance due thereon of $809 54 was drawn out by the appellant.

From all the evidence in the case, it is quite certain, indeed conceded, that of the $1200 drawn from the Savings Bank on the 31st of March, 1869, the purchase money was paid for the property in question. And this being so, in view of the facts before stated, upon what principle are we to conclude that the $1200, thus drawn from the deposit account, constituted a part and parcel of the partnership funds? It was the money of Ellen Kelly on deposit before and when the partnership was formed, and there is nothing in the case to justify the conclusion that it had been actually and intentionally dedicated to partnership purposes, and so made to form a part of the partnership funds.

But the proof utterly fails in another most essential particular; and that is, that the draftsman of the deed prepared it in a form and made it convey an estate different from what was really intended by the parties, that is, the grantees. It is contended by the appellant that it was the intention of the grantees or assignees that the property should be conveyed to them in joint tenancy, and not as tenants in common; and thus have secured to them the right of survivorship in the property. But the proof, as to this part of the case, is so indefinite and inconclusive, that it furnishes no safe ground upon which to base a decree.

The proof mainly relied upon is that given by witnesses Fox and King. That given by Fox determines nothing, because he says he did not know the difference between a joint tenancy and a tenancy in common; and the only instruction that he received from Mrs. Kelly, as to having the deed made, to give it in his own words, was this: "I asked Mrs. Kelly in particular, as I knew her better, how I should get the deed made out, and she said, 'You know the way we are living, and you know the way to get it

made out.' I then asked whose name should go first; and she said it made no difference ; I might get Miss McDonnell's name first ; and then Ann McDonnell said, 'no, get Mrs. Kelly's name made first, as she is the oldest ' '" He refers to other conversations with Mrs. Kelly, but there is nothing definite in any of them. And then he says he cannot be positive what instructions he gave Mr. Reynolds, the draftsman of the deed, as to the form in which the parties desired the deed prepared. He does say that it was his intention to have instructed the draftsman so to prepare the deed that the longest liver of the grantees should take all ; but he cannot say whether he in fact gave such instruction. Mr. Reynolds is quite confident that the deed was prepared in accordance with the instruction given him at the time. The deed was executed and accepted, and placed upon record, and more than seven years were allowed to elapse before its correctness was in any way questioned.

And as to the testimony given by the witness King, the assessor, for the purpose of showing how the parties supposed they were holding the property, in view of the testimony of other witnesses, particularly that of Doctor Taylor, as to the mental and physical condition of Mrs. Kelly at the time of the transaction related by King, no consequence, to affect the rights of Mrs. Kelly, can attach to what then occurred. Indeed, it would be a simple mockery of justice to hold that she should be bound and concluded by what occurred on that occasion: She was then almost entirely blind. She had been suffering from mental disorder that rendered her unfit, if not quite incompetent, to transact business ; and the witness himself cannot say positively, that she uttered a word or took any part in the transaction. She neither signed nor swore to the returns of the property made to the assessor, and there is nothing from which it can be reasonably inferred that she either understood or gave any assent to what was stated in the returns, or the affidavit made by the appellant.

And apart from the evidence supposed to be furnished by the testimony of the two witnesses, Fox and King, there is really nothing in the record to give the least support to the pretension of the appellant; to say nothing of the many facts and circumstances shown in evidence which tend strongly to refute and disprove her claim. Besides all this, the lapse of time before proceedings instituted, and the fact that no question or objection was raised in regard to the form and effect of the deed until after the death of Mrs. Kelly, a period of nearly eight years, add greatly to the presumption against the appellant, and increase the necessity for plain and demonstrative proof of the facts upon which she founds her claim to relief. *Beard vs. Hubble,* 9 *Gill,* 420.

2. Then, as to the shares of the stock in the Building Association, to which the appellant makes claim, upon the alleged ground that the money paid on the shares, amounting to $1170, was an investment of the profits accruing from the business of the partnership. This allegation of the bill is also directly denied in the answer of the executor of Ellen Kelly, and we think the proof utterly fails to support the claim.

The proof relied upon in support of the claim to the money due on these shares of stock is very much the same as that adduced in support of the claim to the entire leasehold interest. The returns made to the assessor, King, are relied on, together with the additional fact, that·there was a paper drawn by the witness King, as he states, at the request of the appellant, directing the Building Association to enter the shares of stock in the joint names of the original holder, Ellen Kelly, and the appellant. This paper was handed to the appellant, but it was never signed by Ellen Kelly, and it does not appear that she ever understood the nature and import of it; and it was never acted on by the Association. As we have already stated, there was nothing in the transaction with King, the assessor, so

far as Ellen Kelly was concerned, that could be allowed to affect her as an admission in favor of the appellant. That transaction seems to have been conducted exclusively by and between King and the appellant; Ellen Kelly taking no part in it. The affidavit to the returns was made by the appellant alone, and unless it could be shewn that Ellen Kelly was fully cognizant of and assented to the returns as made, there is no principle upon which she could be bound, as by an admission, in favor of the appellant.

The shares of stock were taken in 1872, and held exclusively in the name of Ellen Kelly to the time of her death. It does not appear that the appellant had any thing to do either with the original purchase of the shares, or the subsequent payment of the dues thereon. The shares were purchased through the agency of Michael McDonnell, the son-in-law of Mrs. Kelly, and he kept the book, and continued to act as the agent in the payment of the dues, down to the time of Ellen Kelly's death ; and if his testimony is to be believed, the payments were all made from the individual or separate means of Mrs. Kelly, and the appellant had no interest in or concern with this stock whatever. And as to the credibility of Michael McDonnell, we discover nothing in the record, or the circumstances under which he testified, that would justify the withholding belief in his testimony.

Upon the whole, we are of opinion that the Court below was right in decreeing against the appellant and in dismissing the bill ; and that decree will be affirmed, with costs.

*Decree affirmed.*

(Decided 3rd May, 1878.)