## THE GEORGE GUNTHER, JR., BREWING CO. *vs.* WINCENT BRYWCZYNSKI.

*Specific Performance—Lack of Good Faith on Part of Plaintiff.*

The owner of a house and lot executed a mortgage of it to a Brewing Company, to which he also gave an option to buy the property at a designated price. Afterwards the owner agreed to sell the property to the plaintiff who paid a sum on account of the purchase money. On the same day the plaintiff was informed by the Brewing Company that they had a claim on the property and it offered to return the sum paid by him, which was refused. Subsequently, the owner conveyed the property to the Brewing Company, in pursuance of the option, and the company entered into possession. After that, and with knowledge of that, the plaintiff tendered the balance due on the purchase money to the former owner and demanded a conveyance. Upon a bill by the plaintiff against the former owner, to which the Brewing Company was later on made a party defendant, asking for specific performance, *held*, that since the plaintiff had not acted in good faith throughout the transaction, and knew of the claim of the Brewing Company, he is not entitled to the decree asked for as against the legal title now held by the Brewing Company.

*Decided April 10th, 1908.*

Appeal from the Circuit Court of Baltimore City, (ELLIOTT, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and WORTHINGTON, JJ.

*Vernon Cook* and *John M. Requardt* (with whom were *Gans & Haman* on the brief ), for the appellant.

*William Colton*, for the appellee.

WORTHINGTON, J., delivered the opinion of the Court.

The object of this suit is to enforce the specific execution of a contract for the sale of certain real and personal property located at 834 S. Luzerne street in Baltimore City. The principal facts out of which the case arises are substantially as follows:

On March 25th, 1905, one, Frederick R. Marks, being the owner of the property in question, then used by him as a dwelling house and saloon, mortgaged the same to the George Gunther, Jr., Brewing Company, the appellant, to secure the payment, with interest of a loan of $500, that day made to him by the Brewing Company.

The mortgage indebtedness was evidenced, as to the principal sum, by a promissory note bearing even date with the mortgage, payable two years after date, to the Brewing Company; and there were also four interest notes of like date, payable in six, twelve, eighteen and twenty-four months, respectively, each for the sum of $12.50; thus showing the rate of interest to be 5 per cent per annum.

The mortgagor covenanted in the mortgage that he would purchase all the beer which he should use in his business, from the mortgagee; and the mortgagee engaged to furnish the same in uniform good quality at the usual and ruling market rates for its product. This mortgage was duly recorded on the day of its date in one of the Land Records of Baltimore City. The mortgage recited that it was given to secure the payment of the notes above mentioned. The note for the principal, was, in words and figures, as follows:

"$500.00                    Baltimore, March 25th, 1905.

Secured by mortgage of even date herewith. Two years after date I promise to pay to the order of the George Gunther, Jr., Brewing Company, Five Hundred Dollars. Value received."                        "Frederick R. Marks."

On the back of this note was the following endorsement; "Before the maturity of the within mortgage note, I hereby give the payee thereof the privilege of buying the said mortgaged property for two thousand dollars."

"Frederick R. Marks."

About eighteen months later, that is on October 1st, 1906, Marks contracted to sell the mortgaged property to a certain Vincent Brywczynski, the appellee in this case for the sum of $2,000, including his saloon and fixtures, and gave Brywczynski a receipt for a cash payment of $150.00, then made on account of the purchase price. This receipt as contained in the record is as follows:

"Baltimore, October 1st, 1906.

Received from Mr. Wincent Brywczynski the sum of one hundred and fifty dollars as part payment on the premises known as 834 S. Luzerne street. Saloon and fixtures included. Purchase price two thousand dollars ($2,000). Settlement to be made in twenty days.

[Seal]                        Frederick R. Marks,
            Witness:        Charles L. Nake."

A few days prior to the 1st of October, 1906, the appellee called to see Mr. George Gunther, Jr., the president of the George Gunther, Jr., Brewing Company, at the company's office at Canton, and made some inquiry concerning the property at 834 Luzerne street, with reference to any claim the Brewing Company might have against it. The evidence is conflicting as to just what was said by Mr. Gunther in reply to the appellee's questions on that occasion. The appellee says that Mr. Gunther told him that the Brewing Company had no lease or mortgage on the property, but that Marks owed it money. Mr. Gunther testified that the appellee asked him if the Brewing Company had any lease or anything to do with the Marks property, and he told the appellee that the company had no lease, but did have something of an agreement and that the appellee should not buy it. He further testified that at the time, he did not remember the particulars of the option or agreement with Marks because the mortgage note was in bank. It appears further from the testimony

taken at the trial of this case in the Court below, that not-withstanding this warning Brywczynski, the appellee, went to see Marks about the purchase of the property, on October 1st, 1906, and then and there, though it was the first time he had ever spoken to Marks, bought it from him for $2,000, paid him $150.00 down and entered into immediate possession.

Before he closed with Marks, however, he says he asked him if he could change the beer sold in the saloon, and that Marks told him that he could change it that day if he wanted to; whereupon, he says, he paid Marks the $150.00 and took his receipt, as set out above.   On the same day, soon after Brywczynski paid the $150.00 to Marks and obtained the latter's receipt, the two went together to Gunther's Brewery to see Mr. George Gunther, Jr.

As soon as Mr. Gunther was informed of the sale of the property, he said it was not right, that Brywczynski had no business to buy the property and offered to give him back the $150.00 which had been paid Marks on the purchase; but Brywczynski refused to receive it.   On October 10, 1906, Marks conveyed the property to the Brewing Company and on the next day, that is on October 11th, 1906, the appellee, whether because the appellant demanded rent of him for the property, or because of the contention about whose beer should be used in the saloon, does not certainly appear, but for some reason he closed up the place and went to his home on Broadway, taking the key of the saloon with him.   Bry-wczynski had notice of this conveyance to the Brewing Company, but nevertheless, on October 18th, 1906, he sought Marks and tendered him the sum of $1,850, that being the whole balance of the purchase money for the property, according to the face of his contract with Marks without regard to the mortgage indebtedness; and also at the same time he tendered Marks a deed to be executed by Marks conveying the property to him.   Having already parted with the title to the property by the conveyance to the Brewing Company, Marks declined to accept the money or to execute the deed.

As the saloon remained closed after October 11th, with no

one in possession, on October 18th, 1906, the Brewing Company instituted proceedings before a Justice of the Peace, under the Act of 1890, ch. 327, to obtain possession of the same. Whether these proceedings were regular or not is unimportant to this inquiry, as in pursuance thereof the Brewing Company was put in possession of the property on October 24th, 1906, and still remains in possession.

On October 26th, 1906, the appellee instituted that suit against Frederick R. Marks as the sole defendant. On November 8th, 1906, Marks answered by solicitor admitting an agreement with the appellee to sell him the property in question for $2,000., *including the stock of liquors* and fixtures in the saloon, but setting up the previous contract on March 25th, 1905, with the Brewing Company, and averring that the Brewing Company had exercised its right under that contract and that he (Marks) had made a deed to it for the property dated October 10th, 1906, which deed had been duly recorded among the Land Records of Baltimore City in Liber O. R. No. 2176, folio, 347. In his answer Marks further averred that Brywczynski had previously surrendered possession of the property to the Brewing Company, and had demanded of the respondent the return of the $150 paid him on account of the purchase money; that the respondent was ready and willing to repay the said sum less the value of the stock sold by the plaintiff while in possession, amounting to $50. Subsequently, on April 4th, 1907, upon petition of the appellee, alleging that it appeared from the answer of Marks that he had sold the property to the George Gunther, Jr. Brewing Company, that company was made a party defendant to these proceedings, and the case was finally brought to trial on December 6th, 1907. For some reason Marks was not called as a witness by either party to the cause.

The decree of the lower Court in effect was that the Brewing Company should, upon the payment to it of the sum of $1,850, by Brywczynski, convey to him the property in question and also restore to him possession thereof. The Brewing Company brings this appeal.

The object of this proceeding being to obtain a decree for the specific execution of a contract, it may be well to have before us some of the familiar principles governing a Court of equity in the exercice of its power to specifically enforce the performance of contracts.   Specific performance is not a matter of absolute right to either party, but rests in the discretion of the Court, to be exercised on consideration of all the circumstances of each particular case.   But while the exercise of the power is always in the discretion of the Court, yet such discretion is not an arbitrary one, but controlled by settled principles of equity.   *Willard* v. *Taylor*, 8· Wall. 555, 19 L. ed. 501.   The mere fact of the existence of a valid contract is not sufficient of itself to entitle the plaintiff to this relief, but the Court has regard for the conduct of the parties and circumstances outside the contract.   *Bamberger* v. *Johnson*, 86 Md. 41.   The contract must be free from any suspicion of its *bona fides*.   *Thomas* v. *Brewing Company*, 102 Md. 426. It must be made under circumstances that favorably commend it to the Court.   *Chicora Fert. Co.* v. *Dunan*, 91 Md. 153–4.   A party insisting upon specific performance must make out a complete equity.   20 *Ency. P. & P.* 395.

Now applying these general principles to the facts of· the case at bar, we find that at least one of the essential elements of such a transaction as will induce a Court of equity, when called upon for the purpose, to exercise its extraordinary power of specific performance, wanting.   This consists in the apparent want of good faith on the part of the plaintiff in entering into the contract with Marks.   The plaintiff testified that October 1st, 1906, was the first time he had ever spoken to Marks, and yet he went in and concluded a bargain forthwith, paid him $150 down for property to which he did not know what sort of title Marks had, if any, except what Marks told him; entered at once into possession and began business immediately without even waiting to have the license transferred to his name.   When asked at the trial of the case on cross-examination where he received the $1,850 which he tendered to Marks on October 18th, he gave no satisfactory

answer, saying that he got it from Cohen to whom he had
sold, as he says, his saloon on Broadway.    Yet he testified
that he did not give up that saloon until the 22nd of October,
four days later.    He would not say that he got the money
from Cohen before the 22nd of October, but said the papers
were at his house and would show.    If he had $1,850 on
October 18th, he should have stated where he obtained it.
This unsatisfactory answer may have been due to his indiffer-
ent knowledge and use of the English language, but it may
also have been due to an effort on his part to conceal the
real facts.

As Brywczynski says he knew of the sale of the property
to the Brewing Company on October 10th or 11th, it was a
wholly idle and useless performance for him on October 18th,
to take a package of money, containing $1,850, and offer it
to Marks for property to which he then knew Marks had no
title whatever.    If it be said that he made the tender in order
to comply with the conditions of the contract of October 1st,
the question is, why was that necessary?    The law does not
exact any such vain performance.    If he had faith in his claim
of right under the contract, why did he vacate the premises,
and apparently make no resistance to the proceedings by
which the Brewing Company obtained possession thereof?
His conduct has not been wholly consistent with his present
pretentions.    In another part of his cross-examination the ap-
pellee denied repeatedly that Marks was present at a certain
conversation between himself and Smith, the agent of appel-
lant, but finally admitted that Marks was present.    This
showed at least a lack of candor on his part.

Brywczynski's conduct throughout raises at least a sus-
picion that he was not acting in perfect good faith, and where
there is even a suspicion of a want of *bona fides* on the part of
the plaintiff relief by way of specific performance will not be
granted.    Moreover, he had notice from the Brewing Com-
pany before he contracted with Marks, that it had a claim on
the property, and on the very day he made the purchase, the
forfeit of $150 which he had paid to Marks, was tendered

back to him but he refused to receive it.   The deed from Marks to the appellant of October 10th, 1906, was no doubt made in recognition of his obligation to the Brewing Company under the whole mortgage transaction of March 25th, 1905.   The appellant being in possession of the property in question and having the legal title thereto by virtue of the deed to it from Marks, a Court of equity is not warranted in compelling it, under the circumstances of this case, to surrender the rights and property which it has thus lawfully acquired, even though the Court might have refused to specifically enforce the option of March 25th, 1905, in its favor.

There are many cases in which a Court of equity will not exert its powers to enable a party to acquire title to a thing and yet will refuse to disturb a title already acquired without its agency.   *Crane* v. *Gough*, 4 Md. 332.

Under all the circumstances we think the relief sought by the plaintiff should have been denied.   We will therefore reverse the decree of the lower Court and dismiss the bill of complaint with costs to the appellant.

*Decree reversed with costs and bill dismissed.*