## JAMES BLAINE HARMAN *v.* LOLA LUELLA HURST.

[No. 54, October Term, 1930.]

*Decided January 13th, 1931.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, and Sloan, JJ.

*Horton S. Smith,* for the appellant.

*Eugene P. Childs,* for the appellee.

Bond, C. J., delivered the opinion of the Court.

A residuary legatee under a will of his father sues in equity to remove a cloud upon title claimed by him in real estate once conveyed by the father to the respondent, his daughter, with a reservation in the grantor of a power to sell, and later conveyed by the grantor to another and by that other back to the grantor. The relief has been denied and the complainant appeals. The questions raised for decision are three: Was the reservation in the deed to the daughter invalid because repugnant to the estate granted? If not invalid for that reason, was it invalid because inserted in the deed in violation or fraud of rights in the daughter, and may it for that reason be now eliminated and the deed taken and enforced as a conveyance without reservation? And, finally, if the reservation was valid in all respects, did the transfers to an intermediary and back to the grantor constitute a valid execution of the power reserved?

The property was a farm of sixty acres in Anne Arundel County, owned by the grantor and testator, Guston R. Harman, since 1901. His wife died in the year 1912, and from that time, until his own death, in 1926, he had the son and daughter, and friends, alternating in living in the house with him and making a home for him there. For short periods he lived in Washington. In November of 1917, the daughter and her husband went to live with him on the farm, and

there is testimony that the daughter's husband demanded a conveyance of the place as a prerequisite. The daughter described the transaction as a purchase. There was no discussion with the father on price for the property, only a nominal consideration was stated in the deed, and all testimony agrees that no money consideration was paid. The daughter testifies that it was understood by the father that repairs were needed and would have to be made by the daughter and her husband if they went on the place, but this understanding is not based on any agreement or on any discussion of repairs, but is inferred only from the apparent need described. Testimony of several witnesses introduced by the complainant, and not materially contradicted by the respondent, lead us to the conclusion that the property was conveyed to the daughter without any consideration passing at the time, but upon an agreement, not expressed in the deed, that the daughter and her husband would provide a home for the father on the place during the remainder of his life. And the conclusion is decisive of much of the controversy. Both the father and the daughter appear to have thought, for a time, that the undertaking to support and provide a home was expressed in the deed.

The testimony shows no discussion between father and daughter, or with her husband, on the provisions to be embodied in a deed of gift or transfer. The transfer was in the hands of the father alone; his attorney prepared the deed upon his instruction alone. There is testimony of two witnesses to subsequent declarations of the father that he had read the deed to the daughter and son-in-law before the time of its execution. There is also testimony that the reservation of the power to sell or mortgage was designed by the father or his counsel to protect him in case the daughter should fail to provide him a home as expected. After the daughter and son-in-law went on the place, they expended several hundred dollars in repairs; the exact amount is left uncertain, but appears to have been about $1,200 or $1,300.

Shortly after these transactions and after the repairs had been made there was some controversy between the father

and the son-in-law, and the latter ordered the father out. And the father then warned him and the daughter that the terms of the deed did not permit them to put him out; and they thereupon took the deed to an attorney, and were advised that it did not give them an unqualified ownership. The son-in-law thereafter left the place, deserting his wife, and after about two years the daughter, too, left the place finally. The daughter denies all knowledge of the reservation in the deed at the time of its execution, and contests the validity of it on the ground that its insertion was at variance with the agreement or understanding with the father, and in violation of a trust reposed in him when he was left to have the deed prepared. And the evidence seems to show that shortly after the time of execution she either did not know of it or did not comprehend it. The evidence leaves us with the belief, however, that she and her husband were informed of it at the time of the controversy referred to. Furthermore, the question of ownership, and the effect of the terms of the deed, appear to have been subjects of banter between the son and daughter during some years before the father's death.

In 1920, after the departure of the daughter and the son-in-law, the father made a contract for the sale of the place to one Peterson, with payments of the purchase price to be made in instalments; and Peterson took possession. The grantor continued to dwell in the house with Peterson, receiving his board and lodging without any express arrangement for it, without charge and without having any deduction made for it from the purchase price. The daughter called at the place several times while Peterson was there, and was present when Peterson's purchase was talked of. She sold some of her furniture to Peterson. Peterson was never able to keep up his payments, paid the father between $500 and $600 in all, and, after an occupation of eighteen months or more, left. No objection was made by the daughter to a sale to Peterson. While the contract with him was in force, and during the years after, she complained only of the loss of her money expended in repairs.,

It was on December 20th, 1921, that the father conveyed the property to his attorney, and the attorney reconveyed it to the father. While this was done under the form of a sale, the transaction was, in substance, an appropriation of the ownership to the father himself. There is testimony that, at the time, these deeds were intended as preparation for a conveyance to Peterson, upon his completion of his purchase. Late in the following year, the father executed a mortgage on the place to Addie M. Gardner, of Baltimore City, for $1,000.

The son, now complainant, had lived with the father on the place at intervals since the year 1912, and the son and his wife lived there with him during a period prior to the father's death, in 1926. The son was in possession at the time of institution of this suit.

By a will executed in 1922, the father first divided between the two children the sum of $750 to be received from insurance, and then bequeathed to his daughter $1,625 to be paid her in cash, in addition to her half of the insurance money. And the son was made residuary legatee of all the estate, real and personal. The personal assets have proved to be insufficient to pay the debts and the money legacy to the daughter, and the son, therefore, has offered to pay his sister the amount of the legacy and to pay all debts, upon her executing a quitclaim deed to clear the title to the real estate in him. And upon the sister's insisting that title to the property is in herself, under the deed of 1917, her brother has filed the bill of complaint praying that the respondent be required to receive the sum tendered and to execute a release or quitclaim deed, or that a trustee be appointd to receive the money and execute the deed.

The reservation of the power of sale is, in this instance, an integral part of the granting clause of the deed. The property was granted to the daughter, "her heirs and assigns, in fee simple, subject and reserving to myself the right to mortgage or sell." The intention is clear; and it controls the effect of the deed as written. *Devlin, Deeds,* sec. 843a; *Hammond v. Hammond,* 159 Md. 563. And it is settled

by previous decisions that there is no invalidity in such a defeating reservation because of repugnancy. *Hammond v. Hammond, supra; Marden v Leimbach,* 115 Md. 206, 209, 80 A. 958; *Weinbeck v. Dahms,* 134 Md. 464, 107 A. 12; *Beranek v. Caccimaici,* 157 Md. 144, 146, 145 A. 369; 1 *Tiffany, Real Property* (2nd Ed.), 1050.

This court has not been able to agree that the reservation may be eliminated and disregarded on the ground that its insertion constituted a fraud upon the daughter, or infringement upon any rights of hers. In contending for this, the daughter seeks, in effect, a reformation of the deed and enforcement of a supposed contract to convey an estate without the reservation. Such a contract to convey might, as argued, be supported by consideration, or estoppel arising out of a subsequent benefit to the father in making a home for him or expending money in repairs on the faith of a conveyance of the fee without restrictions. *Hardesty v. Richardson,* 44 Md. 617; *Loney v. Loney,* 86 Md. 652, 38 A. 1071; *Haines v. Haines,* 6 Md. 435. And cases reviewed in notes, 33 A. L. R. 1494, and 14 Brit. Rul. Cas. 853. But the undertaking would need to be established clearly, especially after the lapse of so many years since the recording of the deed and notice to the daughter of the qualification on complete ownership, and since the silencing of the father's testimony by his death. *McDonnell v. Milholland,* 48 Md. 540; *American Automobile Ins. Co. v. Shapiro,* 151 Md. 383, 387, 135 A. 163; *Hesson v. Hesson,* 121 Md. 626, 638, 89 A. 107; *White v. Shaffer,* 130 Md. 351, 99 A. 66; *Horner v. Woodland,* 88 Md. 511, 41 A. 1079; *Thomas v. Brewing Co.,* 102 Md. 417, 423, 62 A. 633. And as there appears to have been here no clearly expressed bargain with the father, it would be difficult to say with the requisite assurance that the reservation was contrary to the agreement of the parties. But it seems sufficient to say, on the daughter's contention, that a court of equity could only reform a deed for the purpose of setting up an actual contract of the parties, and even if the reservation could be eliminated, the court could not install as a

fair embodiment of their arrangement a deed without the reserved power, and also without recognition and embodiment of the undertaking on the other side of making a home for the father. That would be not to set up the agreement made, but to set up a one-sided, unbalanced arrangement in its place. The father's seeming purpose in making the conveyance, and the benefit which it sought for him, would be denied, and the grantee protected in a defeat of that purpose and benefit. That result would be at variance with the office of a court of equity. It would be an award of more than equity to the daughter, after she on her side has failed to do equity. "A slight consideration may support an agreement made by a parent with a child; but the consideration, however slight, must be performed." *Shepherd v. Bevin,* 9 Gill, 32; *Simmons v. Hill,* 4 Har. & McH. 252, 1 Am. Dec. 398. "A party insisting upon specific performance must make out a complete equity." *Gunther, Jr., Brewing Co. v. Brywczynski,* 107 Md. 696, 701, 69 A. 514, 516; *Pomeroy, Specific Performance,* sec. 175.

In determining whether the father's double transfer of title, to his attorney and back to himself, was effective as an exercise of the power of sale reserved, it is of prime importance that the father himself was the beneficiary of the power. He, himself, as we construe the deed, was to receive the proceeds of any mortgage or sale. It is hardly conceivable that it should be otherwise. That a grantor of land should reserve in himself a power to mortgage or sell, without interest in the proceeds, and only for the benefit of the grantee, would be too unlikely to be considered as possible. There would then hardly be a reservation to the grantor. *Schaidt v. Blaul,* 66 Md. 141, 145, 6 A. 669; *Herbert v. Pue,* 72 Md. 307, 309, 20 A. 182; *Devlin, Deeds,* sec. 982. If this construction be accepted, if on a sale the equivalent of the land in money is to belong to the grantor, and if, consequently, he may afterwards reconvert the money into the land by a new purchase, and no one but himself is interested in the character or value of that which ultimately comes to

him, whether the land or the money, is he in the exercise of the power nevertheless restricted to a transfer to another in exchange for money of that other? "Now, let us ask if there was any necessity in law or reason for the barren form of a sale of the house when the person entitled to the proceeds did not wish a sale, but desired to have the house itself." *Small v. Marburg,* 77 Md. 11, 20, 21, 25 A. 920, 922. Courts of equity have followed a more reasonable doctrine in cases of exercise of such powers. Parties entitled to the proceeds of sales of land under powers of sale are permitted to take the property instead of the money, and hold the land in its natural state. *Gerling v. Wyand,* 147 Md. 117, 121, 127 A. 486; 1 *Tiffany, Real Property* (2nd Ed.), sec. 1230; *Pomeroy, Equity Jurisprudence,* secs. 1175 to 1177; *Craig v. Leslie,* 3 *Wheat,* 563, 4 L. Ed. 460; *Prentice v Janssen,* 79 N. Y. 478; *Rockland-Rockport Lime Co. v. Leary,* 203 N. Y. 469, 97 N. E. 43; *In re Tatham,* 250 Pa. 269, 95 A. 520. There are comparatively few cases of powers reserved to grantors themselves to make later sales for their own benefit, but the essentials of the situation are the same as those to which the equitable doctrine of reconversion is regularly applied. Upon exercise of the power the interest is entirely that of the beneficiaries, and there is no reason why they should be forced to convert their interest from land into money if they desire it in the form of land. And applying this doctrine to the present case, we see no reason why the father of the parties, having reserved to himself the power to sell, and to pocket the money proceeds, should be denied the right to take his interest in the property in its natural state rather than in its money equivalent. We conclude, therefore, that the transfers made must be held to have constituted a valid exercise of the power of sale.

*Decree reversed, and case remanded for the passage of a decree granting the prayers of the bill of complaint, with costs to the appellant.*