(Decided 18th June, 1872.)

MATTHEW CLARKE, Tenant in possession, *vs.* WM. L. LANCASTER'S Lessee.

*Parol evidence to Change the language of a Deed.*

A deed described the land intended to be conveyed thereby, as beginning "at a rock on the north side of the road from Boonsborough to Williamsport, near the north east corner of the deed from ―― ―― to John S. Rowland, for part of said Manor, and running from thence, on the north side of said road, north thirty-eight degrees, east twenty-two degrees, south sixty-three degrees, east thirty-five, south thirty-eight degrees, west twenty-five and one-half, then by a straight line to the beginning." In an action of *ejectment,* brought to recover possession of this land, parol evidence was offered by the plaintiff to show that where degrees were mentioned in the deed, at the end of the first line of the land, *perches* should be substituted, and also to show that *perches* ought to have been inserted at the end of the second and third lines. HELD:

That this evidence was inadmissible, as the effect would be not to explain but to change the language of the deed, and to insert words which it did not contain.

APPEAL from the Circuit Court for Washington County.

This was an action of *ejectment*, brought by the appellee against the appellant, to recover possession of some five acres of land in Washington county. The plea was "not guilty," and defence was taken on warrant, under which surveys and locations were made. The plaintiff claimed title as purchaser from James Marshall, trustee in insolvency of Benjamin Lancaster.

*First Exception:* At the trial the plaintiff proved the deed to him from James Marshall, dated the 26th of November, 1859, and explained by the surveyor who executed and returned the plats in this cause, how the land was located on the plats. He also gave in evidence the proceedings in insolvency under the application of Benjamin Lancaster, by which it appeared that Marshall obtained an order to sell the land in question, and that in pursuance of such order he sold it to the plaintiff on the 12th of February, 1859, and that the sale was finally ratified by the Court. The plaintiff then offered in evidence a deed from Sophia Fitzhugh to Benjamin Lancaster, dated the 20th of December, 1845, and in connection therewith proposed to prove by said Lancaster that the five acres therein mentioned were, at the time of its execution, surveyed and laid off to him as the land he was to take under the deed; that he was present at the survey, saw where the beginning was established, where the lines ran to, and that at the end of the first line a stone was planted; that he saw all the other lines surveyed and the courses established; and that under this deed he took possession of the land embraced in said survey in the year 1845, and enclosed it and held it until sometime in 1856 or 1857; and that said land was correctly located on the plats.

The defendant objected to the admissibility of the deed and accompanying parol proof, under the declaration and issue in the case, as being variant from the declaration and containing no certain or sufficient description of the land; and that it was not competent for the plaintiff by the parol proof to give

effect to, the deed. The Court (PERRY, J.) overruled the objection and allowed the deed and parol proof to be given in evidence to the jury. The defendant excepted.

*Second Exception.:* The plaintiff then proceeded to prove by the witness Lancaster that he was the grantee in the deed; that before its execution and delivery and before any survey of the land, he entered into possession; that when he took possession the land was in timber; that he cleared and enclosed it; that it was surveyed according to his enclosure and possession; that he was present at the survey, and the deed to him was for that very land. The witness also stated that the survey commenced at the rock on the north side of the public road between Williamsport and Boonsborough and ran thence to the end of the first line where a stone was planted; thence the second line was run to his enclosure where they placed a pile of stones, but that the length of the line in the deed did not reach that far; that from the pile of stones the third line was run to the said public road, passing by a sassafras tree that stood on the line of his fence not far from the said road, and thence the fourth line was run by his fence to the beginning. The witness then proved that he was present at the survey made under the warrant in this case; that it commenced at the same point where the former survey began, and the lines were run in each survey alike; that the stone at the end of the first line was no longer there, nor the pile of stones at the end of the second; and the sassafras tree had been either blown or cut down, but that he pointed out to the surveyor executing the warrant the places where the stones had been, and the stump of the sassafras tree. The plaintiff then proved by Mr. Downin, who surveyed the land under the warrant of re-survey, that Lancaster was with him on the survey, and pointed out to him on the land the beginning, the enclosures, and the spots where a stone was planted at the end of the first line, and a pile of stones at the end of the second, and the stump of the sassafras tree on the third line—all of which he located on the plats. He further stated that in running the

lines, he ran them with the understanding that the word "degrees" in the deed, designating the distance of the first line, meant perches, and the blanks as meaning perches also, for the lengths of the second and third lines; that he counterlocated with this understanding also, and one of the counterlocations was begun at the north-east corner of Rowland's land, whereas the stone at which he began the location for the plaintiff, was at the 'south-east corner of said Rowland's land, and that it was impossible for him to locate the land, according to the reading of the deed. To the testimony of Lancaster and Downin, for the purpose of showing the true description in the deed, and to enable the plaintiff to locate the property in controversy, the defendant objected. The Court overruled the objection and admitted the evidence. The defendant excepted.

The defendant then gave evidence of his title, and rebutting evidence was introduced by the plaintiff. Prayers were offered on both sides, and other exceptions were taken by the defendant, which it is deemed proper to omit, as no reference is made to them in the opinion of this Court.

Verdict and judgment being for the plaintiff, the defendant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ROBINSON, J.

*F. M. Darby* and *Daniel Weisel,* for the appellant.

The defendant's first and second exceptions are well taken:

*First.* Because the deed from Sophia Fitzhugh to Benjamin Lancaster, offered in evidence by the plaintiff, is clearly variant from the declaration; and the description contained on the face of the deed is such, that it would be impossible to locate the land, close lines, or to ascertain *any area* from it. It is a striking illustration of a "description of land so inaccurate as to render its identity wholly uncertain;" for which reason the deed is void. *Neel vs. Hughes, et al.,* 10 *G. & J.,*

10; *Wilson vs. Inloes,* 6 *Gill,* 121; *Boardman, et al. vs. Reed, et al.,* 6 *Peters,* 328.

*Second.* Because the parol evidence offered and allowed to be given by the plaintiff to aid and explain the defective description of the land in the Fitzhugh deed, ought to have been rejected. This parol proof goes to the extent of *changing* words contained in the deed, and of adding words to the deed, which violates one of the cardinal principles of the law of evidence. 1 *Greenleaf on Evidence, sec.* 275, &c.

Boundaries and calls cannot be shown by parol evidence, unless there is a deed or grant corresponding with the boundaries, and appropriating the land contained within the boundaries, &c., so shown. *Boardman, et al. vs. Reed, et al.,* 6 *Peters,* 328.

*William T. Hamilton* and *Attorney General Syester,* for the appellee.

One and the same question gives rise to the first and second exception of the defendant. It is in respect to the deed from Mrs. Fitzhugh to Benjamin Lancaster.

In that deed, north, —— degrees, east, —— degrees, is an absurdity, and the surveyor could not locate the deed according to its reading.

The difficulty here arises from the face of the deed itself— its expressions in respect to the *description of the lands* are ambiguous. 1 *Greenleaf on Evidence, sec.* 298.

Courses and distances are expressed in a deed not to determine or define the quality of the estate conveyed. But to point out the place where the lands lie, and embrace so much as was in the contemplation of the parties. They are resorted to as the evidence, but not the only, nor yet the best evidence in the location of the land; and where the face of a deed presents no difficulty and *no ambiguity,* it is the province of the Court to say whether a deed has or has not been truly and properly located. But where the expressions are doubtful, uncertain, ambiguous or impracticable of actual location, the

jury is the proper tribunal to decide the fact of location, and the *true location* in such cases may be ascertained by evidence *de hors* the deed. *Dorsey's Lessee vs. Hammond*, 1 *Har. & J.*, 190, 201; *Connelly vs. Bowie*, 6 *H. & J.*, 143, 144; *Helms' Lessee vs. Howard*, 2 *Har. & McH.*, 79; *Rogers' Lessee vs. Moore*, 7 *Har. & J.*, 141, 146; *Rench vs. Beltzhoover*, 3 *Har. & J.*, 469; *Pennington vs. Bordley*, 4 *Har. & J.*, 450; *Carroll vs. Norwood*, 5 *Har., & J.*, 163.

But the question here is not so much one of construction as of evidence.

Was the evidence "legally admissible for the purpose of showing the true location" of the five acres of land mentioned in the Fitzhugh deed? The evidence shows that B. Lancaster entered upon the five acres, then in timber, before the survey of the lines, &c., was made, cleared off the timber, and enclosed the lands. After this the survey and location were made *according to those enclosures.*

The lines were run in conformity with the actual enclosures and the possession of Lancaster. According to that survey and location the deed was executed, and the lands intended to be conveyed were those so enclosed and possessed. And in describing the lands the expressions found in the deed were used to define the lines and boundaries as these actually existed, and were marked by the enclosures and possession. These lines must be taken as the true location of that deed. They were intended to be defined and described in the deed, and not any other lines or boundaries. No other location could have been made, and certainly no other *should have been made.* It was the only true location of which the instrument was susceptible, and in making the location, we were not confined to or bound by a literal interpretation placed upon the expressions intended to define the lines or boundaries. The jury was to be placed as nearly as possible in the situation of the parties whose written language was to be interpreted—*the question being, what did the persons so circumstanced mean by the language employed?*

That it was intended by this deed that five acres should pass from Fitzhugh to Lancaster, is as plain as demonstration. But what five acres, and where situated? It does not admit of a question, that evidence of the circumstances under which a deed is executed is admissible as showing what lands were intended to be conveyed. These circumstances place the Court and jury in the position of the parties and enable them to interpret intelligently the language used by them, and for this purpose extrinsic evidence must be admissible. *Stanley vs. Green*, 12 *Cal.*, 162; *Shore vs. Wilson*, 9 *Cl. & Fin.*, 556; *Hildebrand vs. Fogle*, 20 *Ohio*, 157; 1 *Greenleaf's Evidence*, secs. 295, 298; *Kellogg vs. Smith*, 7 *Cush.*, 382; *Frost vs. Spaulding*, 19 *Pick.*, 445.

Nor is this deed to be declared void for uncertainty, because the boundaries are not defined in scientific terms and precision. Before a deed is declared void for want of certainty in the description of the lands intended to be conveyed, the law will lay hold of extrinsic facts and call in surrounding circumstances to aid in the interpretation of the expressions used.

Here the courses are given, and what was intended to define the distances of the several lines, is expressed as degrees, *instead* of perches. There are also calls in the deed; the only thing ambiguous is that the word "degrees" is used instead of perches, when the length of the lines is to be ascertained. Shall this deed be declared void for that? *Commonwealth vs. City of Roxbury*, 9 *Gray*, 490; *Kellogg vs. Smith*, 7 *Cush.*, 382.

BRENT, J., delivered the opinion of the Court.

The question presented by the first and second bills of exception in this case, is the admissibility of parol evidence to show that the deed from Sophia Fitzhugh to Benjamin Lancaster, under which the appellee claims title, is truly located upon the plats. The deed describes the land sued for as beginning "at a rock on the north side of the road from Boons-

borough to Williamsport, near the N. E. corner of the deed from ———— ———— to John S. Rowland for part of the said Manor, and running from thence, on the north side of said road, *north thirty-eight degrees, east twenty-two degrees, south sixty-three degrees, east thirty-five, south thirty-eight degrees, west twenty-five and one-half,* then by a straight line to the beginning, &c." The object of the evidence offered was to show that where *degrees* are mentioned in the deed, at the end of the first line of the land, *perches* should be substituted, and also to show that *perches* ought to have been inserted at the end of the second and third lines.

While the general rule was conceded by the counsel for the appellee, that parol evidence was inadmissible to alter or change a written instrument, it was contended that this deed was so ambiguous in the courses and distances given, that parol evidence must be admitted to explain them. The effect of the offer is very clearly to our minds not to explain, but to change the language of the deed, and to insert words which it does not contain. If there is any ambiguity, it is a patent one, and the evidence offered, instead of explaining and giving effect to the terms of the deed, varies and contradicts them. "Parol evidence cannot be admitted to contradict or control the language of a deed. But latent ambiguities may be explained by such evidence." 3 *Wash. on Real Prop.,* 347. In the case of *Newcomer vs. Kline,* 11 *G. & J.,* 457, a bill in equity was filed to insert the word *dollars* in a single bill which had been drawn for " three hundred and ten, for value received." To this bill the defendant demurred, among other reasons assigned, upon the ground that the complainant had a remedy at law, and could maintain an action upon the single bill by making proper averments in the declaration, stating that the omission of the word dollars was the result of a mistake in writing the single bill, and proving the averments by parol evidence. The Court, in their opinion, say, "The complainant had not full and adequate remedy at law, and was therefore entitled to the relief which he solicited at the hands

of a Court of Equity. * * By mistake and accident, as charged in the bill, to which there was a demurrer, the word "dollars" was omitted, in consequence of which the plaintiff was deprived of the specific security which was intended to be given, and was unable to support his action upon the single bill, in a Court of Law, as a specialty. The principle being well settled, that the consideration of a single bill cannot be inquired into, or a failure of it averred or proved in an action at law. *Key vs. Knott,* 9 *G. & J.,* 342. It is therefore inconsistent with the legal attributes of such an instrument, or its character of conclusiveness, as a specialty, *that it should rest partly in writing and partly in parol.* Where the ambiguity is not latent, and raised by extrinsic evidence, but patent or apparent on the face of the instrument, parol evidence is not admissible to explain such ambiguity; as where a blank is left for a devisee's name in a will, parol evidence cannot be admitted to show whose name was intended to be inserted. *Ros. Ev.,* 12."

To admit the parol proof, offered in this case to explain and modify the deed before us, would be in direct opposition to the principles here laid down. It would make the deed "rest partly in writing and partly in parol;" would substitute an important word for another—that is *perches* for *degrees*—and fill up by inserting the word perches, what is claimed to be a blank at the end of the description of the second and third lines of the track of land, which was intended to be conveyed. This cannot be done. In the case of *Thomas vs. Turvey,* 1 *H. & G.,* 435, which was an action of *ejectment,* title was claimed, under a levy and deed by the sheriff for "part of a tract of land called Borough Hall," without further description. It was attempted to identify by extrinsic evidence the land levied upon and sold, but the Court held it to be inadmissible. They say "a deed for part of a tract of land, designating the quantity, but without any description of the part sold, when unsupported by the principle of election, would be void. The ambiguity on the face of the conveyance cannot be explained by extrinsic circumstances."

The cases relied upon by the appellee rest upon different principles and are not applicable to the one before us. In the case of *Dorsey vs. Hammond*, 1 *H. & J.*, 190, the grant was an old one, and the fifth and last line called to run in a *straight* line from a point on the river to the beginning, which also stood upon the river. The whole tract was described as "lying on the west side of the north branch of Patuxent river," and not until the last line was run and located did it appear that it did not bind upon the river. Here arose a latent ambiguity, and the Court left it to the jury to determine, under all the circumstances, whether this line did not in fact bind upon the river. If so the river was a controlling call and the line must go to it. The cases of *Connelly vs. Bowie*, 6 *H. & J.*, 144, and of *Rogers vs. Moore*, 7 *H. & J.*, 141, present questions of the true locality of a boundary. There was no ambiguity upon the face of the grant in either case, but the ambiguity was raised by extrinsic evidence. The cases of *Stanley vs. Green*, 12 *Cal.*, 162, and *Commonwealth vs. Roxbury*, 9 *Gray*, 490, were also old grants, and turned upon the doctrine of "reasonable intendment" as ascertained from the grants themselves.

It was very strongly urged in the argument for the appellee, that before a deed is declared void for want of certainty in the description of the lands intended to be conveyed, the law will lay hold of extrinsic facts and call in surrounding circumstances to aid in the interpretation of the expressions used. This will depend upon the character of the uncertainty, which it is attempted to remedy, and will be understood by a reference to one of the many cases in which this doctrine is announced. In the case of *Crafts vs. Hibbard*, 4 *Met.*, 452, it is said, "it is well settled that parol evidence cannot be introduced to contradict or control the language of a deed, but it is equally well settled that latent ambiguities may be explained by such evidence. Facts, existing at the time of the conveyance and prior thereto, may be proved by parol evidence, with a view of establishing a particular line

as the one contemplated by the parties, when such line is left by the terms of the deed, ambiguous and uncertain." That is where the ambiguity is a latent one; but not where such evidence would contradict or control the language of the deed.

The deed before us does not present a case of latent ambiguity, but the uncertainty and ambiguity complained of is apparent upon its face. The parol evidence, which was offered and admitted by the Court below, as set forth in the first and second bills of exception, alters and contradicts it, and we think was clearly inadmissible. This deed is vital to the recovery of the appellee, who was plaintiff below, and as it cannot be located, there is no reason for sending the case back for a new trial.

*Judgment reversed.*

(Decided 18th June, 1872.)