ALEXANDER PRESTON, TRUSTEE IN INSOLVENCY OF JOHN AHERN *vs.* MARIA G. HORWITZ AND OTHERS.

*Laches—Fraudulent Conveyances—Insolvency.*

A bill by a trustee in insolvency to set aside certain conveyances of property by the insolvent because fraudulent as against his creditors, filed twenty years after the execution of the conveyances, sixteen years after the adjudication of insolvency and twelve years after the death of the grantee, is barred by laches.

Between 1872 and 1875 certain conveyances of real estate absolute on their face were made by A. to H.   In 1879 A. applied for the benefit of the insolvent law and H. was appointed his trustee, the assets reported being of little or no value.   In the same year A. was discharged under the law.   A. as administrator of his wife, who was a large creditor, claimed that the property covered by said conveyances had been conveyed to H. upon a secret trust to shield the same from the creditors of A., and as security for money loaned by H. to A., and demanded the same from H.   These demands were repudiated by H. and no steps were then taken to enforce them.   In 1887 H. died.   In 1892 a new trustee in insolvency for A. was appointed, and he filed a bill against the representatives of H. to vacate the conveyances on the ground of fraud.   The creditors of A.

who had asked for the appointment of the trustee, repudiated all allegations of fraud against H. and the bill was dismissed by counsel. Afterwards A. caused plaintiff to be appointed his trustee in insolvency, and in 1894 he filed the bill in this case containing the same allegations as the bill of 1892. *Held,*

1st. That the creditors, having delayed for many years and until after the death of H. to assert their claims, the bill must be dismissed for laches.

2nd. That the fact that H., who was alleged to have been a participant in the fraud, was also the first trustee in insolvency of A., was no excuse for the delay, because the creditors could have themselves filed the bill to set aside the conveyance after or before the appointment of H.

3rd. That even if the trust sought to be enforced in this case was express, yet laches is a good defence.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (HARLAN, C. J.), dismissing the bill of complaint in this case. The principal allegations of the bill were as follows :

"*Fourth.*—Your orator is informed, believes and charges, that the conveyances dated February 20, 1872, and January 8, 1873, respectively, were executed merely as security for money then or previously loaned by said Orville Horwitz to said John Ahern, and that the amounts of said loans and agreements to reconvey upon repayment of the same were embodied in unrecorded written agreements or memoranda made at the dates of said deeds respectively ; that the last three of said five conveyances were made partly as additional security for money due upon said loans, but principally to shield the properties from the creditors of said John Ahern being made when he has become heavily involved through endorsements for certain corporations, which subsequently ruined him ; that no money passed from said Orville Horwitz to said John Ahern either upon the conveyance of the land in Canton, of that near Calverton or of the farm in Harford County, either as purchase money or as a loan, except that said Orville Horwitz paid to George B. Graves, upon receiving a conveyance from him February 9, 1875, the balance of the purchase money due him, the whole not

having been paid by said Ahern, and the amount thus paid to Graves was regarded between said Orville Horwitz and said John Ahern as a loan from the former to the latter.

" *Fifth.*—Your orator does not know the true amount of the indebtedness of said John Ahern to Orville Horwitz as the date of the last of said conveyances, nor how much said John Ahern had paid thereon prior to March 11, 1879, but he charges that the amount due on said date, as security for which said Orville Horwitz was holding all of the property hereinbefore mentioned, was less than twelve thousand dollars, the amount returned by said insolvent, John Ahern, with the concurrence and under the direction of the said Orville Horwitz in said schedule.

" *Sixth.*—Your orator charges that at the time of the insolvency proceedings the properties above mentioned, held by said Orville Horwitz as security, would have brought at public auction many thousand dollars more than the total amount of said John Ahern's indebtedness to said Orville Horwitz.

" *Seventh.*—Your orator is credibly informed and believes and charges, that said Orville Horwitz never exercised any act or authority or ownership over any portion of the properties included in said five conveyances until the said conveyances to him as trustee in insolvency ; whereupon he immediately took possession of all said properties, except one house which has remained to this day in the possession of said John Ahern, and disposed of certain parcels thereof, and held and enjoyed the remainder to the time of his death, but said Orville Horwitz has never accounted in Court nor to said insolvent's creditors for any of said parcels of land, or for the proceeds of any that he disposed of."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, PAGE, BOYD and RUSSUM, JJ.

*John F. Preston* and *Charles J. Bonaparte,* for the appellant.

*Bernard Carter,* for the appellees.

FOWLER, J., delivered the opinion of the Court.

The two parties who were alone interested in the transactions out of which these and other similar proceedings grew, are both dead, the one, Mr. Orville Horwitz, having died in the year 1887, and the other, Mr. John Ahern, who, although still living when this bill was filed, has since then departed this life. We say that the two persons we have just mentioned were the sole and original parties to the transactions which are the subject of this litigation, because the whole claim of the plaintiff is based upon the allegation that certain deeds made by Ahern to Horwitz in the years 1872, 1873 and 1875 are fraudulent and void as against Ahern, and therefore void as against his creditors who are represented in these proceedings by the plaintiff, who is Ahern's substituted trustee in insolvency.

In order to fairly present the question on which we think the fate of this bill depends, it will be necessary to state some of the conceded facts relating to the origin of the claims here set up, the manner in and the means by which they have been prosecuted.

It appears that Mr. Horwitz and Mr. Ahern had been for many years engaged in large real estate transactions *inter sese*, as well as with many other persons. Among the deeds executed at various times by the latter to the former are five conveyances, which are made the foundation of this bill, which was filed by the plaintiff as substituted trustee in insolvency of the late Mr. Ahern, for the purpose of setting aside the deeds just mentioned. The first of these deeds was made in February, 1872, the second in January, 1873, the third in July, 1874; the other two, one in February and the remaining one in September, 1875. Subsequent to the execution of the last of these conveyances Ahern became insolvent and Horwitz was appointed his trustee in insolvency by the Circuit Court for Baltimore County on the 11th March, 1879. It appears that Ahern's assets were of little or no value, and the result was inactivity on the part of his creditors. But it was plainly their

duty to be alert, and either themselves take steps to discover and collect the assets of the insolvent or require the trustee so to do. And especially was it their duty to act promptly if they had, as they had in this case, constructive notice of the alleged fraudulent conveyances by the insolvent to Horwitz before he became trustee. Ahern appears to have been finally discharged under the provision of the insolvent law on the 8th of August, 1879, and about eight years thereafter the trustee, Mr. Horwitz, died. Nothing, however, was done by any of Ahern's creditors until the 6th of April, 1892, when nearly thirteen years after the insolvent proceedings were instituted, and some five years after the death of the trustee, a petition was filed in the Circuit Court for Baltimore County in the names of William A. Fisher, trustee, and others, creditors of Ahern, asking for the appointment of another trustee in the place of the late Orville Horwitz. In compliance with these petitions, William Brand was appointed, and he subsequently filed a bill, of which the bill in this case is a copy, charging that all of the five deeds we have heretofore mentioned were fraudulent and void. On the 15th of June following the appointment of Mr. Brand as trustee the creditors who had asked for his appointment came into Court and in the most vigorous manner disclaimed and repudiated all allegations of fraud against Horwitz. The consequence was that the order appointing Mr. Brand was rescinded, and the bill he had filed was dismissed by order of his counsel. Several months elapsed before any further steps were taken, when Mr. Ahern attempted to renew the litigation by retaining Mr. F. X. Ward, of the Baltimore bar, as his counsel. Up to this time Mr. Ahern had been acting as administrator of his wife, who had been returned in the insolvent proceedings as one, if not the largest of his creditors. His daughter, Mrs. Lawson, was now substituted in his place, and thus acted both in a representative capacity and as next of kin of her mother. With her father she visited Mr. Ward to consult him in regard to the claims she supposed

she had against the estate of Orville Horwitz, but that attorney, after examining the merits of the case, advised his clients that they had no claim either at law or in equity. It is to be regretted that this advice was not followed. However, Mr. Ahern determined, in spite of what would seem to have been insurmountable obstacles, to prosecute his claim to a successful termination. He, therefore, made a third attempt, and secured new counsel, who instituted proceedings.for the appointment of a new trustee in insolvency. The plaintiff in this case having been appointed such trustee, he filed his bill on the 8th January, 1894, which bill, as we have seen, is a copy of the one which was theretofore filed and dismissed by the former trustee, Mr. Brand.

It appears from the foregoing recital that these present proceedings were commenced more than twenty years after the execution of the first and second of said deeds, and almost twenty years after the making of the others, which are attacked by the bill. We have already stated that these conveyances were made in 1872, 1873 and 1875, and that Mr. Horwitz died in 1887. Therefore, he lived fifteen years after the first, and twelve years after the last of the deeds now questioned were made, and eight years after his alleged fraud in failing to return as part of the assets of Ahern's insolvent estate the property conveyed by the deeds in question. But in addition to this it appears from the testimony of Mr. Ahern himself that during the life of Mr. Horwitz, the former made demands upon the latter, as would seem to be clear from the evidence, based upon the assumption of the truth of the allegations of the bill, and these demands Mr. Horwitz refused to comply with, whereupon the intimacy between him and Mr. Ahern ceased. Mr. Ahern testified that he told Mr. Horwitz that he had not left a roof to shelter him, and that Mr. Horwitz replied, " You can have any one of the houses you deeded to me." It seems incredible that if Mr. Ahern had such a claim against Mr. Horwitz as he claims to have had that he would not have

*then* enforced it, or at least attempted to do so. The fact that he did not move during the lifetime of Horwitz subjects the whole claim to the gravest suspicion.

When Horwitz refused to comply with Ahern's demands or within a reasonable time thereafter Ahern or his creditors should have taken the proper steps to set up the claims which are now being urged. But so far from acting in a reasonably prompt manner they have slept upon their rights, if they ever had any, and never instituted proceedings of any kind until years after Horwitz's death. The deeds in question were duly executed and recorded more than twenty years ago, and the creditors, therefore, had constructive notice of their existence. They also had actual notice of the proceedings in the Insolvent Court in 1879, at which time it is alleged Horwitz was guilty of fraud and collusion with Ahern in withholding and concealing the property conveyed by said deeds.

We refrain from a more detailed statement of the evidence, the most important part of which was furnished by Mr. Ahern, for after a careful examination of it we are convinced that its consideration, even if admissible, would be neither instructive nor profitable.

This litigation and that which preceded it appears to have been started and prosecuted by the late Mr. Ahern. It is true that two of his creditors, whose claims amounted to less than $300, joined in the application for the appointment of the plaintiff, but it must be remembered that they had already disclaimed in the most emphatic manner any responsibility whatever for the charges of fraud which were contained in the first bill, and which are also made the foundation of this. If the allegations in the former bill were without foundation, those in the bill now before us must be equally so, for they are identical. It is difficult, therefore, to understand upon what theory the two creditors who refused to join in the former proceedings instituted by Mr. Brand, as trustee, have consented to join in this. But, however this may be, we are satisfied from all the cir-

cumstances of this case that the claim here set up at this
late day is not entitled to a favorable consideration at our
hands.   We feel no hesitation in applying to it the doctrine
of laches.   It has often been said, and it is laid down in
the text books, that there is no fixed rule as to what will
constitute laches, but that each case as it arises must be de-
termined by its own particular circumstances—in other
words the question is addressed to the sound discretion of
the Court in each case.   Mr. Beach in his *Modern Equity*
says:   " The principal foundations of the doctrine are ac-
quiescence and lapse of time ; but other circumstances will
be taken into consideration.   Thus it is a material circum-
stance that the claim is not made *until after the death of
those who could have explained the transaction.*"   1 *Beach
Mod. Eq.*, sec. 18.   As we have already seen, not only has
a long time elapsed since the doing of the alleged acts here
complained of, but even the proceedings first instituted
were not commenced until long after the death of the
alleged wrong doer.   This being so there can be no doubt,
we think, that a case is presented which calls for a strict
enforcement of the doctrine of laches, unless there be some
ground for the suggestion that this defence is not available
here, first, because " laches cannot be imputed where there
is no one to sue, and that the cause of action accrues only
in a case such as this from the time there is a competent
person to bring it."   We think, however, this objection is
not well taken, for the creditors of Mr. Ahern could have
themselves filed a bill to set aside the alleged fraudulent
conveyances as well before as after the appointment of Mr.
Horwitz as trustee; *Conrad Leiman's Estate*, 32 Md. 225 ;
*Haugh* v. *Maulsby*, 68 Md. 423 ; *Diggs* v. *McCullough and
wife*, 69 Md. 598 ; and therefore the fact that the trustee
was himself alleged to be guilty of fraud constitutes no
excuse for the long delay.

   But it was also urged that laches will not be allowed
as a defence to charges of violations of an *express* trust ; but
the contrary rule is well established.   *Hanson and wife* v.

*Worthington et al.,* 12 Md. 441.   In the case just cited the trust sought to be enforced was *express* and continuing, and it was said that the parties claiming, as well as the trustee against whom they claimed, being all *alive and in Court,* subject to its decree, relief should be granted, not, however, because the defence of laches had no application to such a trust, but because under the circumstances of that case there had been no such acquiescence or concurrence on the part of the plaintiffs as ought to preclude them from relief as against the trustee who was *alive and in Court. Hawkins* v. *Chapman,* 36 Md. 99.   In this case, which was another of express trust, this Court again announced the general rule thus : " The policy of the law is to give quiet and repose to titles, and Courts of justice ought not to countenance *laches* or long delays on the part of claimants." See also *Nelson* v. *Hagerstown Bank,* 27 Md. 51 ; *Hall* v. *Claggett,* 48 Md. 243 ; *McDonnell* v. *Milholland,* 48 Md. 548 ; *McCoy* v. *Poor,* 56 Md. 204.

*Decree affirmed with costs.*

(Decided February 18th, 1897.)