## ANNA I. LOVE vs. ELEANOR T. ROGERS, MARGARET RUSSELL WORTHINGTON ET ALS. MAGGIE RUPP vs. SAME.

*Equity: breaches of trust; laches. Trustees: purchase of trust property.*

After a long lapse of time (17 years) since the commission of the acts and breaches of trust, complained of in a bill; when other interests have acquired the property sought to be recovered, and when the party charged with the fraud is dead, in the absence of satisfactory explanation for the delay, a complainant can have no standing in equity, where conscience, good faith and reasonable diligence are required.

p. 530

Laches may constitute a valid defense to breaches of trust.

p. 530

A purchase of the trust property by the trustee is not void, but voidable; it may be confirmed by the parties interested, directly or indirectly, by acquiescence, or by failure to elect to avoid the conveyance. p. 533

*Decided November 13th, 1912.*

Appeal from the Circuit Court for Baltimore County, in Equity (BURKE, J.).

The facts are stated in the opinion of the Court.

The two causes were argued together before BOYD, C. J., BRISCOE PEARCE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Robert H. Carr* and *Richard B. Tippett* (with whom were *Ed. P. Crummer* on the brief), for the appellant.

*William Pinkney Whyte, Jr.,* and *John S. Ensor* (with whom was *John J. Timanus* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

It appears from the original bill of complaint in this case, which was filed by the appellant against George C. Worthington on the 27th of November, 1908, that Rezin H. Worthington died in 1884 leaving a will by which he devised to each of his three grandchildren, Anna I. Love, the appellant, her sister, Maggie Love, and Grace Worthington, an undivided one-third interest for life in a farm in Baltimore county containing about 467 acres. The will provided that in the event of any one of said devisees "dying without issue," etc., her share of said farm was to become a part of the residue of the testator's estate, which was devised and bequeathed to his son, Thomas Chew Worthington. There was a partition of the farm, and the share allotted to the plaintiff contained about 123 acres.

The bill further charges that at the time the partition was made the plaintiff was an infant and that "her estate was in the hands of her mother, who was her guardian until about the time" she became of age; that her said guardian paid to the defendant from the proceeds of the crops raised on plaintiff's property sums of money with which he was to pay State and county taxes for the years 1887, 1888 and 1889, and that notwithstanding said payments to him the defendant allowed two parcels of her land, one containing eight and the other ten acres, to be sold for taxes in 1889, and that the same were purchased by Thomas Chew Worthington who, in 1892, conveyed them to the defendant. That the plaintiff was kept in ignorance of her rights and was deprived of the income from and possession of her property by deceit and misrepresentation, and that notwithstanding the defendant, who professed to be acting in her interest, took possession of said farm and the crops raised thereon in the year 1892, he allowed another parcel of her land, containing nine and one-quarter acres, to be sold for taxes in December, 1892, and he became the purchaser thereof. That on or about July 25th, 1893, the defendant represented to the plaintiff that it was necessary for her to sign a paper in order that he might

take care of and protect her property, and that she was thereby induced to sign the paper without knowing its contents, and that she afterwards learned that it was a general power of attorney. That after the execution of said paper the defendant continued in the management and control of her estate, claiming that said paper conferred upon him rights of a trustee, and that his authority had been recognized by the Court; that he always refused to account to her for the proceeds of her property, and in 1895 allowed another parcel of her land, containing twenty-two and one-quarter acres, to be sold for taxes, and that said parcel was also purchased by him. That the plaintiff has never received any part of the income from her said property, which was largely in excess of the amount required to pay the taxes thereon, and that she was not notified that her property was to be sold for taxes except in one instance when she was powerless to prevent it by reason of the acts of the defendant. That in 1905 the defendant, without her knowledge, executed a mortgage to John M. Gittings, covering the several parcels of her land which had been sold for taxes and purchased by him, to secure the payment of $3,000.00. That being informed, shortly before November 25th, 1908, that the defendant was about to further encumber her said property by an additional mortgage for $600.00, the plaintiff caused to be prepared a bill of complaint to be filed in the Circuit Court for Baltimore County to protect her estate, but was induced by counsel for the defendant not to file it pending arrangements to secure said sum by a mortgage on other property of defendant, and that while the means of securing said sum was being discussed by counsel for the persons interested, a mortgage for said amount, and covering the property of the plaintiff purchased by the defendant, was, by the connivance of the mortgagee, secretly executed by the defendant and his wife. That the defendant was about to dispose of his interest in the property covered by said mortgages, and that in August, 1908, the plaintiff sent to

the defendant, who was serving a sentence in the Maryland Penitentiary, the following letter and notice:

"*Dr. George C. Worthington, Maryland Penitentiary, City*—

DEAR SIR: I am informed that a few days ago you made an attempt to lease my property for a long term. Do you know that you had neither right nor authority to do so. In order that I may have additional written evidence, I am sending notice to you herewith. Very respectfully,

ANNA I. LOVE."

"*Dr. George C. Worthington, Maryland Penitentiary, City*—

You are hereby notified that I, the undersigned, do hereby revoke, annul and cancel any and all authority, whether verbal or in writing, heretofore given to you or procured by you from me pertaining to my property and property rights of every kind. It being my intention and desire to terminate any authority you may have had to act for me in reference to the same. Witness my hand and seal this 10th day of August, 1908.            ANNA I. LOVE. (Seal)"

The prayer of the bill was that the several parcels of land sold for taxes be decreed to be the property of the plaintiff and those interested in remainder, according to the terms of said will; that the defendant be enjoined from conveying, etc., any part of said property; that he be required to account to the plaintiff for the rents and profits received by him from the property of the plaintiff while he was in possession thereof under said power of attorney, and for general relief.

No exhibits were filed with the bill, and no subpœna was issued against George C. Worthington, the only defendant in the case; the plaintiff did not obtain an order for the injunction prayed for, and nothing further was done until December 22nd, 1910, when the plaintiff filed a petition alleging that the defendant had died since the filing of the original bill, and praying that his heirs-at-law and the mortgagee in said mortgages be made parties, and that she be allowed to file an amended bill. On the same day an amended bill and exhibits were filed, the bill was demurred to by the

defendant, Eleanor T. Rogers, one of the heirs-at-law of George C. Worthington, and the demurrer was sustained with leave to the plaintiff to file an amended bill.

On the 29th of April, 1911, the plaintiff filed her second amended bill against the heirs-at-law of George C. Worthington and Thomas Chew Worthington and the mortgagee, in which, in addition to the averments of the original bill, she alleged that she was born on the 19th of September, 1872; that the first two tax sales were made during her infancy and that she did not know of the other sales; that the parcels of land purchased by Thomas Chew Worthington were conveyed by him to George C. Worthington in order that he might better discharge the trust assumed by him; that George C. Worthington and Thomas C. Worthington were both dead, and that George C. Worthington died in 1910; that the plaintiff "lived for many years a member of the household of said Dr. George C. Worthington, during all of which time he represented to her that he was trustee of her estate and managing it to her advantage." That she "had no knowledge that the legal title to parts of her estate was claimed individually by the said George C. Worthington, on the contrary, she had been told by" him "that what had been sold during the guardianship of her mother had been bought in for her, and not until after" he "had been confined in the Maryland Penitentiary several years, did" she "have knowledge of the deceit and fraudulent acts and conveyances of which George C. Worthington was guilty in endeavoring to obtain the legal title to her estate." This bill, which seeks the same relief prayed for in the original bill, was demurred to by the defendants, Eleanor T. Rogers and Margaret Russell Worthington, heirs-at-law of George C. Worthington, and the appeal in this case is from a decree of the Circuit Court for Baltimore County sustaining the demurrer and dismissing the bill.

At the time George C. Worthington became the purchaser of the two parcels of land conveyed to him by Thomas Chew Worthington, and the parcel sold for taxes in 1892, the

plaintiff was about twenty years of age, and she was twenty-three years of age at the time of the alleged sale and purchase of the fourth parcel in 1895. She alleges in her amended bill that George C. Worthington represented to her that he had purchased the two parcels of land from Thomas Chew Worthington for her use and for the protection of her estate, and that she did not know until several years after his confinement in the Maryland Penitentiary that he claimed them as his property, but it does not appear from the record in this case when his confinement in the penitentiary began, and she does not state when she first learned of the sale and purchase of the other parcels, or when she became aware of the mortgage of 1905. The bill charges that after she signed the power of attorney in 1893, George C. Worthington always *refused* to account to her for the rents and profits received by him from her property. It therefore appears that all of the alleged breaches of trust of which the plaintiff now complains, except the execution of the mortgages of 1905 and 1908, occurred more than fifteen years before the filing of her amended bill of complaint, and that even after her failure to prevent the execution of the second mortgage on her property, she waited for more than two years, and until after the death of George C. Worthington, before making any effort to correct the wrongs for which she now seeks redress. It is true, the original bill was filed in 1908, but, as we have said, no subpoena was issued against the defendant, and it does not appear that he had any notice of the bill, or that he was required to answer the charges it contained. The plaintiff has assigned no reason for her failure, for more than seventeen years, to require George C. Worthington to account for the rents and profits received from her property, and has failed to satisfactorily account for the great delay in asserting her claim to the property purchased by him. After such a lapse of time, and after other interests have been acquired in the property sought to be recovered, and death has closed the lips of the one charged with the fraud, in the absence of a satisfactory explanation of the delay, the plaintiff can have

no standing in a Court of equity, where conscience, good faith and reasonable diligence are required.

In the case of *Stearns v. Page,* 7 Howard, 819, Mr. Justice Grier said that a complainant, seeking the aid of a Court of Chancery under such circumstances of lapse of time as there existed, "must state in his bill distinctly the particular act of fraud, misrepresentation, or concealment—must specify how, when and in what manner, it was perpetrated—and especially must there be distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the Court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made;" and in the case of *Badjer* v. *Badjer,* 2 Wall. 95, the Court said that a party seeking to avoid laches "should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing." In the case of *Williams* v. *Marshall,* 4 G. & J. 376, Chief Judge Buchanan said: "A trustee, who purchases at his own sale, may be treated in chancery, according to circumstances, as a purchaser for the benefit of the *cestui que trust,* and not be permitted to make profit by speculating in the purchase of the trust property; and he may be directed to sell it again for the benefit of the *cestui que trust,* provided it will bring more on a re-sale, than the amount at which he bought it; and if not, he may be kept to his purchase, and held responsible for the stipulated price. But he will in some cases be protected in his purchase, as if the *cestui que trust* be of full age at the time of sale, and under no disability, and with full knowledge of the transaction, lies by for an unreasonable time, or being under age, or other disability, does not, in a reasonable time after coming of age, or the disability is removed, seek to

set aside the sale, or treat the trustee as a purchaser for his benefit, it will be considered as an acquiescence in the sale, and the trustee will not be disturbed in his purchase." Our predecessors have repeatedly stated that "In matters of account, more especially, Courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy; from the difficulty of doing entire justice between the parties (as a Court of conscience is bound to do), where the transactions have become obscure and the evidence may be lost." *Hawkins* v. *Chapman,* 36 Md. 83; *Hall* v. *Clagett,* 48 Md. 223. In the case of *Preston* v. *Horwitz,* 85 Md. 164, JUDGE FOWLER adopts the statement of Mr. Beach in his *Modern Equity* that the principal foundations of the doctrine of laches "are acquiescence and lapse of time; but other circumstances will be taken into consideration. Thus it is a material circumstance that the claim is not made *until after the death of those who could have explained the transaction."* And in the case of *Ripple* v. *Kuehne,* 100 Md. 672, the Court said: "The bill was not filed until more than eight years after the alleged fraud was committed and almost a year after the death of the party charged with the fraud, and the attorney who transacted the business. This Court has repeatedly held that there must be 'conscience, good faith and reasonable diligence to call into action the powers of a Court of equity,'" and that "There are cases where parties are in such position of interest that they ought to assert their right, if they do not acquiesce, and from great lapse of time they are presumed to have acquiesced." In the case of *Hammond* v. *Hopkins,* 143 U. S. 224, the Court held that "A purchase by a trustee of trust property, for his own benefit, is not absolutely void, but voidable; and it may be confirmed by the parties interested directly, or by long acquiescence, or by the absence of an election to avoid the conveyance within a reasonable time after the facts come to the knowledge of the *cestui que trust,"* and Mr. CHIEF JUSTICE FULLER said: "In all cases where actual fraud is not made ou but the imputation rests upon conjecture, where the

seal of death has closed the lips of those whose character is involved, and the lapse of time has impaired the recollection of transactions and obscured their details, the welfare of society demands a rigid enforcement of the rule of diligence."

It is urged by counsel for the appellant that as between trustee and *cestui que trust* the doctrine of laches does not apply to "an express subsisting and recognized trust, except in cases where the trustee sets up an open, public and adverse claim against" the *cestui que trust, etc.* But even if the case at bar could be treated as one between a trustee and his *cestui que trust,* and the contention of counsel was admitted to be sound, it would afford the appellant no avenue of escape from the consequences of her own neglect, for her bill charges that the trustee not only refused to account for the rents and profits received from her property, including the lots he purchased, but that he asserted title to it and conveyed it as security for the payment of his debts.

In the case of *Preston* v. *Howitz, supra,* the Court held that the rule that laches is a good defense to charges of violations of an express trust was well established in this State.

After carefully examining the many cases cited by the appellant, we do not find in them any warrant for granting the relief prayed by the appellant, and we must, under all the circumstances of this case, hold that she has been guilty of gross laches, and affirm the decree of the Court below.

*Decree affirmed, with costs.*