JOSEPH COUDON, INDIVIDUALLY AND AS SOLE SURVIVING EXECUTOR-TRUSTEE OF THE LAST WILL OF GEORGE P. WHITAKER, DECEASED, SARAH F. WHITAKER, ALBERT C. WHITAKER AND ALEXANDER GLASS, EXECUTORS OF THE LAST WILL OF NELSON E. WHITAKER, DECEASED, AND THE WHITAKER IRON COMPANY OF WEST VA.

*vs.*

MARTHA E. WHITAKER, INDIVIDUALLY AND AS EXECUTRIX OF THE LAST WILL OF CARRIE C. UPDEGRAFF, DECEASED, AND MARTHA M. WHITAKER, RUTH E. WHITAKER AND WILLIAM PORTER WHITAKER, HEIRS OF HENRY C. WHITAKER, DECEASED.

*Laches: express trusts.*

Where a complainant had knowledge of the matter complained of, and consulted numerous attorneys in relation thereto, and yet delayed for fourteen years before instituting any proceedings to enforce her rights, the defense of laches is a bar.

p. 488

The defense of laches is good, even as against charges of violation of an express trust.                    p. 490

*Decided January 15th, 1919.*

Appeal from the Circuit Court for Cecil County. In Equity. (Constable, C. J., Adkins and Hopper, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*John A. Howard* and *Thomas H. Robinson* (with a brief by *George R. E. Gilchrist*), for the appellants.

*John S. Strahorn* and *H. A. Brann, Jr.*, (with whom was *Joshua Clayton* on the brief), for the appellees.

Thomas, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Court below overruling a demurrer to an amended bill of complaint after this Court, on a former appeal, affirmed the decree of the lower Court adjudging the original bill bad for multifariousness and granting the plaintiffs leave to amend.

In 130 Md. 234, Judge Pattison set out at length the facts alleged in the original bill, and also the several prayers for relief, and after stating that the decree of the lower Court should be affirmed on the ground mentioned he said: "We think, however, it well to say that by the allegations of the bill it is shown that the plaintiffs are guilty of laches, and if their delay in asserting their rights is not explained in the amended bill, if one be filed, it should be dismissed, if such objection is made to it.

"The bill discloses that the acts of the defendants complained of, upon which the plaintiffs seek relief, occured many years prior to the filing of this bill.

"The dissolution of the George P. Whitaker Company; the appointment of a receiver therefor; the sale of its lands for the alleged inadequate price; the conveyance of said lands to the Whitaker Iron Company; the alleged absorption of the

George P. Whitaker Company by the Whitaker Iron Company, and the alleged wrongful conversion of their one-fifth interest in the George P. Whitaker Company to a one-twenty-fifth interest in the Whitaker Iron Company, if converted at all, occurred more than twenty years prior to the filing of the bill in this case, and, so far as the bill discloses, before any action was taken by the plaintiffs to redress such alleged wrongs.

"The bill discloses no circumstances satisfactorily excusing or explaining their delay in asserting their rights. 'Conscience, good faith and reasonable diligence are always required in a Court of Equity to justify its interposition. Where these are wanting the Court is passive. Laches and neglect are always discountenanced.' "

The facts alleged in the bill now before us are substantially those alleged in the original bill and stated in 130 Md. and need not be repeated here. The prayer of the bill is for a decree declaring the property of the George P. Whitaker Company conveyed to the Whitaker Iron Company to be held by the latter company in trust for the benefit of the estate of George P. Whitaker, and requiring Joseph Coudon, surviving trustee of said estate, to account to the plaintiffs for all property of which they were deprived by the alleged fraudulent acts and conduct of the trustees.

George P. Whitaker died in 1890 leaving a will by which, after making provision for his widow during her life or widowhood, and certain other bequests, he directed the residue of his estate to be divided into five equal parts, and gave one of these parts or shares to each of his two children, Caroline Naudain and Nelson E. Whitaker; one share to Mary Whitaker, wife of his son Edmund S. Whitaker, to be held by her in trust during the life of Edmund S. Whitaker; one share to Carrie Whitaker and George P. Whitaker, Jr., children of testator's deceased son, Henry C. Whitaker, and the remaining share to Nelson Price Whitaker, son of testator's deceased son, Cecil N. Whitaker. The will appointed Joseph R. Whitaker, Nelson E. Whitaker and Joseph Coudon execu-

tors, and they qualified and entered upon the discharge of their duties in 1891. Joseph R. Whitaker subsequently resigned his trust in 1891, and Nelson E. Whitaker died in 1909. Carrie C. Whitaker (Updegraff), one of the children of Henry C. Whitaker, died in West Virginia in 1911, and George P. Whitaker, Jr., the other child of Henry C. Whitaker, died intestate in Hawaii in 1901. The plaintiffs in the present bill are Mary E. Whitaker, executrix and legatee under the will of Carrie C. Updegraff, and Martha M. Whitaker, Ruth E. Whitaker and William Porter Whitaker, alleged in the bill to be the heirs at law of George P. Whitaker, Jr., and described in the title of the case as the heirs of Henry C. Whitaker. The defendants are Joseph Coudon, surviving trustee under the will of George P. Whitaker, the executors of Nelson E. Whitaker and "The Whitaker Iron Company of West Va."

The alleged fraudulent acts of the trustees, Joseph E. Coudon and Nelson E. Whitaker, by which, it is claimed, the George P. Whitaker Company was unlawfully dissolved, its property conveyed to the Whitaker Iron Company, and the plaintiffs' one-fifth interest in the former company was fraudulently reduced to a one-twenty-fifth interest in the latter, to their great loss, occurred, as was said in 130 Md., more than twenty years before the bringing of this suit, and in order to explain the apparent laches referred to by this Court, the plaintiffs make the following allegations:

> "XIV. About 1896 one of the other heirs told Carrie C. Updegraff of said frauds. She went at once to Maryland, stated the facts to a Judge of this Circuit Court, and asked him what she should do to protect her absent brother's rights and her own. He told her she could do nothing as to the George P. Whitaker Company, as the majority lawfully controls corporations, and to seek relief through the estate. She returned home to West Virginia, retained a Wheeling attorney, in whom she ever reposed the utmost confidence, and who advised her in these matters until her death in 1911, gave him all facts and papers in her

possession, and directed him to protect her and her brother. * * * He engaged Mr. H., a Baltimore lawyear, to search the records *re* said 'dissolution proceeding' *et al.* The latter did so, and rendered a comprehensive written report, stating the essential facts and references, papers, dates, etc., to said Wheeling attorney, who went to Elkton, Maryland, investigated said subject and records. Charles C. Crothers, Esq., was retained as local counsel. They advised the 'opening up of matters' by a distribution proceeding to compel an accounting, disclosures and redress. Such proceeding was had without result.

"Said Wheeling attorney, with his client's sanction, again visited Maryland, stated the case and gave all the papers therein to an eminent Elkton attorney, in Cecil County, and engaged him to prosecute the cause. Said Elkton attorney also advised and worked on a distribution and 'opening up' proceeding. Thereafter said Wheeling attorney, on information and belief, became interested in certain corporate enterprises which brought him into relations with said trustee, Nelson E. Whitaker, which long continued. Said attorney went to Maryland at night, took all papers in the case from counsel there and drew a petition himself for relief *in re.* His said client engaged Honorable Austin L. Crothers to present same to the Orphans' Court of Cecil County, Md., which then and until 1912 erroneously held control of this trust estate. He did so and the court of lay judges was disposed to grant it, but said N. E. Whitaker personally, over counsel, told them that George P. Whitaker's will did not authorize any action until his widow's death (she died in 1916), and they would be held personally liable for violations. Thereupon the application was denied, Mr. Crothers expressing his surprise in writing, and N. E. Whitaker and said Wheeling attorney went home together, and the latter did not openly appear for Mrs. Updegraff thereafter, though he advised her to 'keep at it as before,' and later drew the petition filed in Maryland by her, through which the $1,676,000

Whitaker Iron Co.-Whitaker Glessner Co. transaction was disclosed and the frauds alleged herein revealed.

"Failing in efforts to get said Wheeling attorney to act further, said C. C. Updegraff consulted his partner, B. H., Esq., who also declined to act. Then she consulted Attorney George Caldwell, Esq., and prominent bankers and business men, who told her to proceed in Maryland as suggested by counsel. She went again to the Hon. Austin Crothers, who referred her to Attorney Warburton. He likewise applied to 'open up' by petition for distribution, etc., without success. Thereupon she asked advice of Judge Nesbitt, Mayor of Wheeling, who advised her in like manner. She saw other lawyers, and instituted other futile proceedings *in re,* of record in said Cecil County, Md. Finally, she engaged John S. Strahorn, Esq., as her attorney. He, with Mr. Munroe, brought a successful equity proceeding in this Court in or about 1908, for an interpretation of said will, etc. The Court of Appeals affirmed in 1912 (117 Md. 71), and an accounting and partial distribution was had in 1913. Through same, the frauds alleged herein were bared and redress repeatedly requested, specially by full, written notice of December 12, 1913, duly served on all parties in interest. Only after their neglect and refusal to grant redress privately was this action brought therefor.

"From the time she first learned of said frauds, said C. C. Updegraff enlisted the aid of at least fourteen lawyers, several Judges and financial and business men, in constant, diligent and continuous attempts up to her death to ascertain, establish and preserve her said brother's rights and her own in the premises, and brought numerous proceedings therefor, but was helpless until said affirmance decision. Plaintiffs have acted promptly to like end on learning the truth herein through said partial distribution account, which did 'open up' these matters."

These averments of the bill not only fail to satisfactorily account for the delay in the institution of proceedings for the

relief now sought, but they show that as early as 1896 Mrs. Updegraff had *actual knowledge* of the frauds alleged as the basis of the plaintiffs' claims.

Notwithstanding Mrs. Updegraff and George P. Whitaker, Jr., under whom the plaintiffs claim, had constructive knowledge of the dissolution of the George P. Whitaker Company and the transfer of its property to the Whitaker Iron Company, and notwithstanding Mrs. Updegraff, according to the averments of the bill, had *actual knowledge* of the alleged frauds complained of and consulted at least fourteen attorneys in reference to her rights, no proceeding was ever instituted by either of them attacking the validity of the sale of the property to the Whitaker Iron Company or asserting any right to said property, and no suit was instituted by the plaintiffs for that purpose until the original bill in this case was filed.

The appellees contend that the defense of laches is not available in the case of an express and continuing trust, and they rely upon the cases of *Hanson v. Worthington,* 12 Md. 418 and *Morton v. Harrison,* 111 Md. 536. In *Hanson's case* all of the parties interested were alive and in Court, and the Court said: "The parties who have received wrongfully, as well as the executor and trustee, are alive and in Court, subject to its decree; and we see no sufficient reason why the Court may not do simple justice, by an equitable adjustment of the claims of the parties, and a correction of the errors which have been committed. We have said that the trust in John T. Worthington, under the will, was a continuing trust; and that being so, we think the facts of the case do not show any such lapse of time, *laches,* or delay on the part of the complainants as can operate to bar their claim against him. What will constitute such a lapse of time and *laches* as will bar the right of parties to recover on a claim purely equitable, all the authorities say, must depend upon the particular facts of each case." In *Morton v. Harrison, supra,* the suit was between the assignee of a patent and one to whom he had conveyed his interest in trust, and the Court held that the

facts being like those in *Hanson* v. *Worthington, supra,* the defense of laches was not available.

In the case at bar Mrs. Updegraff and George P. Whitaker, Jr., are both dead; Nelson E. Whitaker, one of the trustees who, according to the averments of the bill, was the principal actor in the commission of the frauds complained of, is also dead; and, it appears, other interests have been acquired in the property conveyed to the Whitaker Iron Company. In the case of *Preston* v. *Horwitz,* 85 Md. 164, the Court, referring to the facts in the case, said: "We have already stated that these conveyances were made in 1872, 1873 and 1875, and that Mr. Horwitz died in 1887. Therefore, he lived fifteen years after the first, and twelve years after the last of the deeds now questioned were made, and eight years after his alleged fraud in failing to return as a part of the assets of Ahern's insolvent estate, the property conveyed by the deeds in question. * * * The deeds in question were duly executed and recorded more than twenty years ago, and the creditors, therefore, had constructive notice of their existence. They also had actual notice of the proceedings in the Insolvent Court in 1879, at which time it is alleged Horwitz was guilty of fraud and collusion with Ahern in withholding and concealing the property conveyed by said deeds." In answer to the contention that the doctrine of laches did not apply to the facts of the case, the Court said: "But it was also argued that laches will not be allowed as a defense to charges of violations of an *express* trust; but the contrary rule is well established." In the case of *Love* v. *Rogers,* 118 Md. 525, this Court, after quoting from a number of cases in which the doctrine of laches was stated and applied, said in conclusion: "It is urged by counsel for the appellant that as between trustee and *cestui que trust* the doctrine of laches does not apply to 'an express subsisting and recognized trust, except in cases where the trustee sets up an open, public and adverse claim against' the *cestui que trust.* But even if the case at bar could be treated as one between a trustee and his *cestui que trust,* and the contention of counsel was admitted to be

sound, it would afford the appellant no avenue of escape from the consequences of her neglect, for her bill charges that the trustee not only refused to account for the rents and profits received from her property, including the lots he purchased, but that he asserted title to it and conveyed it as security for the payment of his debts. In the case of *Preston* v. *Horwitz, supra,* the Court held that the rule that laches is a good defense to charges of violations of an express trust was well established in this State."

Apart from other features of the bill, to which it is not necessary to allude, it follows from what has been said that the plaintiffs have failed to account for or satisfactorily explain the delay in the institution of proceedings for the relief sought in their bill, and that the decree of the Court below overruling the demurrer to the amended bill of complaint should be reversed.

*Decree reversed, with costs, and bill dismissed.*